IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONTINENTAL RESOURCES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-704-D |
| | ) |
| GUDERJAHN TRUCKING, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion to Transfer Venue [Doc. No. 18], filed pursuant to Fed. R. Civ. P. 12(b)(2).[1] Although not reflected in the caption, Defendants also seek dismissal for improper venue under Fed. R. Civ. P. 12(b)(3). Plaintiff has timely opposed the Motion, which is fully briefed and at issue.

**Factual Background**

Plaintiff Continental Resources, Inc. is an Oklahoma corporation with its principal place of business in Oklahoma City. Plaintiff appears to invoke federal diversity jurisdiction under 28 U.S.C. § 1332(a); the Complaint contains factual allegations to establish diversity of citizenship, and seeks damages in excess of $75,000 under various common law theories of liability. Defendants are: 1) Guderjahn Trucking, Inc. ("GTI"), a North Dakota corporation with its principal place of business in North Dakota; 2) Jason Guderjahn, an individual resident of North Dakota; 3) North Country Construction & Rentals, Inc. ("North Country"), GTI's alleged successor with the same places of

---

[1] The motion to transfer venue includes alternative requests under 28 U.S.C. § 1631, which permits a transfer to cure a lack of personal jurisdiction, and 28 U.S.C. § 1404(a), which permits a transfer for convenience of the parties or witnesses.

incorporation and business; 4) LJ&S Trucking, Inc. ("LJS"), a North Dakota corporation with its principal place of business in North Dakota; and 5) Lane Knudsen, an individual resident of North Dakota. The Complaint alleges all defendants "operate as alter egos of one another and do business collectively without observing corporate formalities." *See* Compl. [Doc. No. 1], ¶ 7.

The Complaint first claims GTI breached a contract, a Master Service Agreement dated April 18, 2008, under which GTI provided transportation services for Plaintiff until February, 2012. Plaintiff alleges GTI failed to perform its contractual obligations by: not maintaining adequate records; unauthorized subcontracting; violating state and federal laws regarding driving-times limits; overbilling due to inflated hourly rates, inflated driving hours, improper fees, and duplicate billings; and submitting false invoices for services never rendered. In addition to seeking contractual damages, Plaintiff asserts that GTI's conduct constituted a tortious breach of contract and a breach of fiduciary duty, warranting punitive damages. The alleged submission of false invoices and an alleged destruction of records regarding services rendered to Plaintiff form the basis of an additional claim against all defendants for fraud and deceit. The Complaint contends Mr. Guderjahn and Mr. Knudsen personally participated in the alleged fraud, and they were acting for themselves and on behalf of their respective corporations, GTI and LJS. Finally, as an alternative to Plaintiff's assertion that all defendants were alter egos of each other, Plaintiff asserts a claim of civil conspiracy, alleging that all defendants acted together in a concerted scheme to defraud Plaintiff.

Regarding personal jurisdiction in Oklahoma, the Complaint invokes specific jurisdiction with respect to this action.[2] The Complaint alleges that all defendants prepared fraudulent invoices

---

[2] The constitutional requirement of due process may be satisfied by showing "general" or "specific" personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General jurisdiction exists only if the defendant has maintained "continuous and systematic general business contacts" with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

and mailed them to Plaintiff in Oklahoma, that all defendants sent email communications to Plaintiff in Oklahoma, and that all of them provided services to Plaintiff under the Master Service Agreement, which "was negotiated and prepared in Oklahoma." *See* Compl. [Doc. No. 1], ¶ 11. Also, the Complaint alleges that GTI and Mr. Guderjahn knew when they made the contract that it would be partially performed in Oklahoma, where Plaintiff is headquartered.

### I.  Personal Jurisdiction

**A.  Parties' Contentions**

Defendants assert by their Motion that this Court lacks personal jurisdiction over them and an exercise of personal jurisdiction in this forum would be unreasonable. They admit that GTI simply changed its name to North Country, Mr. Guderjahn was president of the corporation, and Mr. Knudsen was president of LJS. Defendants deny, however, that any of them had sufficient contacts with the State of Oklahoma to be sued here. They present the following alleged facts, supported by affidavits of Mr. Guderjahn and Mr. Knudsen, regarding their relationship with Plaintiff: the Master Service Agreement[3] was prepared solely by Plaintiff and mailed to GTI in North Dakota; it was not subject to negotiation or revision, but was simply executed by GTI in North Dakota; Plaintiff subsequently mailed a fully executed copy to GTI; the contract took effect when GTI commenced work in North Dakota; LJS was a subcontractor of GTI; none of the transportation services required by the contract were intended to be performed in Oklahoma; all services provided by GTI and LJS to Plaintiff were performed in North Dakota or Montana; all paperwork regarding the work performed – time sheets, field tickets, invoices, and bills – were prepared by GTI or its

---

[3] A copy of the agreement appears in the record as an attachment to Defendants' Motion. Its actual title is "Master Service Contract," and Defendants refer to it in this manner. For ease of discussion, however, the Court uses the terminology of the Complaint.

subcontractors in North Dakota; GTI prepared invoices in North Dakota for submission to Plaintiff and "the vast majority" were delivered to and accepted by Plaintiff through field offices located in North Dakota or Montana; Plaintiff required certain invoices to be mailed directly to its offices in Oklahoma City; these invoices constituted approximately ten percent of those created by GTI; any subcontracting by GTI occurred in North Dakota; and GTI sent email communications to Plaintiff in Oklahoma but these typically occurred through its corporate secretary and employee, Jennifer Guderjahn, regarding the status of payments due. *See* Motion [Doc. No. 18], ¶¶ 7-10, 12, 14-21. Defendants also state: any acts or communications by Mr. Guderjahn with regard to the contract were done as a corporate officer on behalf of GTI; neither the individual defendants nor LJS ever directed email communications to Plaintiff in Oklahoma; Mr. Knudsen is not an officer of, and owns no interest in, GTI or North Country; Mr. Guderjahn is not an officer of, and owns no interest in, LJS; neither Mr. Guderjahn nor Mr. Knudsen have traveled to Oklahoma for any purpose related to business with Plaintiff; and no defendant has property, assets, agents or employees in Oklahoma, or advertises or solicits business here. Defendants also note that the majority of Plaintiff's oil and gas production occurs in North Dakota.

Plaintiff's response in opposition to the Motion emphasizes "three key jurisdictional facts" that allegedly establish personal jurisdiction over all defendants: GTI entered into and performed for more than three years the Master Service Agreement, which provided for the application of Oklahoma law and required invoices and communications to be sent to Oklahoma; Mr. Guderjahn and Mr. Knudsen, on behalf of themselves and their corporations, directly participated in preparing and sending fraudulent invoices to Plaintiff in Oklahoma; and as a result of the fraudulent invoices and related communications, Plaintiff suffered damages in Oklahoma when it paid the fraudulent invoices. *See* Pl.'s Resp. Br. [Doc. No. 27], at 1. Plaintiff's response is supported by two affidavits.

4

Its treasury manager, Jennie Brinkley, attests that all payments made by Plaintiff on the invoices received from GTI were made from Plaintiff's Oklahoma offices, regardless whether the invoices were received by mail in Oklahoma or were delivered to its offices in North Dakota. An auditor whom Plaintiff engaged to audit GTI with regard to the Master Service Agreement, Alex Watt, attests that he personally met with Mr. Guderjahn and Mr. Knudsen in North Dakota, and was informed they jointly owned GTI and Mr. Knudsen was a "partner" in GTI who operated his portion of the business under the name LJS. *See* Watt Aff., Pl.'s Resp. Br., Ex. 2 [Doc. No. 27-2], ¶6.

**B.   Standard of Decision**

Plaintiff has the burden of establishing personal jurisdiction over each defendant. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004); *Intercon, Inc. v. Bell Atl. Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000). If a Rule 12(b)(2) motion is decided without an evidentiary hearing on the basis of affidavits and written materials, Plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *See Benton*, 375 F.3d at 1074; *Intercon*, 205 F.3d at 1247; *see also Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010); *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009). The Court must accept uncontroverted factual allegations as true and must resolve all factual disputes in Plaintiff's favor. *Bartile Roofs*, 618 F.3d at 1159; *Rusakiewicz*, 556 F.3d at 1100; *Benton*, 375 F.3d at 1074-75; *Intercon*, 205 F.3d at 1247. However, "even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit." *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). Thus, when a defendant with direct access to operative facts submits an affidavit based on personal knowledge, the opposing party must create a genuine issue "through specific averments, verified allegations, or other evidence." *Id*.

To establish personal jurisdiction of a nonresident defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Bartile Roofs*, 618 F.3d at 1159 (internal quotation omitted); *Benton*, 375 F.3d at 1075 (same). Under Oklahoma law, the personal jurisdiction inquiry is simply a due process analysis. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011); *Intercon*, 205 F.3d at 1247. The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

A plaintiff may satisfy the "minimum contacts" standard by establishing specific jurisdiction, which exists "if a 'defendant has "purposefully directed" his activities at residents of the forum . . . *and* the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d, 453, 455 (10th Cir. 1996) (quoting *Burger King*, 471 U.S. at 472) (emphasis added in *Kuenzle*); *see Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *Benton*, 375 F.3d at 1075-76. Purposeful conduct generally requires affirmative acts by the nonresident defendant that create a substantial connection to the state, and not simply unilateral activity of others. *See Dudnikov*, 514 F.3d at 1073-74; *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004); *Benton*, 375 F.3d at 1078.

**C. Analysis**

Plaintiff first contends specific jurisdiction exists based on GTI's contractual relationship and business dealings with Plaintiff, and on other defendants' willing participation in that relationship.[4] Relying on the terms of the Master Service Agreement and facts regarding its performance, Plaintiff contends GTI established a continuing business relationship with an Oklahoma resident. Plaintiff also contends specific jurisdiction exists based on its fraud claim and allegations that all defendants participated in preparing and submitting fraudulent invoices to Plaintiff, which suffered injury in Oklahoma. Particularly with regard to the individual defendants, Plaintiff contends they engaged in tortious conduct directed at an Oklahoma resident that permits an exercise of jurisdiction over them in this forum, even though they may have been acting on behalf of corporate entities. Because a different legal analysis is utilized in contract and tort actions, Plaintiff's two jurisdictional theories will be addressed separately.

**1. Plaintiff's Contract-Based Action**

In cases arising from contractual relationships, the due process analysis is guided by the Supreme Court's opinion in *Burger King*, which rejected "mechanical tests" or "conceptualistic theories" such as the place of contracting or performance and instead "emphasized the need for a 'highly realistic' approach" that considers factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 478-79; *see AST Sports Science, Inc. v. CLF Distrib. Ltd*. 514 F.3d 1054, 1058 (10th Cir. 2008). "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum," but additional facts that demonstrate the pursuit of an ongoing business

---

[4] Although only GTI (now North Country) was a party to the contract, Plaintiff argues that GTI's contacts are attributable to other defendants under its alter ego and civil conspiracy theories.

relationship can support jurisdiction. *See AST Sports*, 514 F.3d at 1059. "Phone calls, letters, facsimiles, and emails provide additional evidence that the foreign defendant pursued a continuing business relationship with the plaintiff. These modern communications can eliminate the need for physical presence [within the state]." *Id*. (internal quotation omitted).

Applying the *Burger King* factors to the undisputed facts of this case, the Court finds sufficient contacts between GTI and the State of Oklahoma to establish personal jurisdiction over this defendant and its successor, North Country. Although no facts are presented regarding solicitation of the Master Service Agreement, the terms of the contract clearly provided for required notices, reports, invoices, and correspondence to be made to Plaintiff in Oklahoma, and provided for the application of Oklahoma law. The contract was apparently negotiated and made by mail between Mr. Guderjahn and Plaintiff's representatives in Oklahoma. Although the parties contemplated that GTI would perform its contractual obligations in North Dakota, Plaintiff was expected to perform its primary obligations – processing invoices and issuing payments – in Oklahoma. GTI admits that, in performing the contract, Plaintiff required certain invoices to be submitted to Oklahoma and GTI utilized email communications to Plaintiff in Oklahoma to facilitate the payment process. Thus, although the parties' actual course of dealing over the three-year period of their relationship may have allowed GTI to submit a majority of invoices to Plaintiff's offices in North Dakota, their dealings also occurred in the manner contemplated by the contract, that is, GTI communicating with Plaintiff in Oklahoma and Plaintiff making payments to GTI from Oklahoma. Under these circumstances, the Court finds that GTI/North Country purposefully directed its activities at an Oklahoma resident and Plaintiff's breach of contract action arises from those activities.

Therefore, Plaintiff has made a sufficient showing to establish personal jurisdiction over GTI/North Country for its action in this forum.[5]

## 2. Plaintiff's Tort-Based Action

Plaintiff's argument regarding Defendants' alleged fraudulent conduct utilizes a jurisdictional analysis employed by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), to determine whether the "purposeful direction" requirement had been met in a tort action.[6] In that case, the Supreme Court found personal jurisdiction in California for a libel action against Florida residents arising from an article published in the *National Enquirer* about a California resident. The Court reasoned that the individuals' Florida conduct was aimed at California, where the subject of the article lived, worked, and suffered harm. *Id*. at 789-90. Addressing arguments by the individuals that they merely wrote and edited the article but their employer was responsible for its publication and circulation in California, the Court stated that each person's contacts with California must be assessed individually and that the employees were "primary participants in an alleged wrongdoing intentionally directed at a California resident." *Id*. at 790.

From *Calder*, the court of appeals has distilled three salient factors to support an exercise of jurisdiction: "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state." *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). These factors were found to be present in *Dudnikov*, which was a declaratory judgment action brought by internet retailers

---

[5] In light of the discussion below, the Court finds no need to reach the issue of whether GTI's contacts may be imputed to other defendants.

[6] This analysis also implicates the "fiduciary shield" doctrine raised by Defendants and addressed in a separate section of Plaintiff's response brief. *See* Defs.' Motion [Doc. No. 18] at 18-19; Pl.'s Resp. [Doc. No. 27] at 13-15.

located in Colorado to determine whether certain products they offered for sale on eBay infringed copyrighted works; the defendant was the American agent of the British copyright holder, located in Connecticut. The court of appeals relied on the facts that the defendant intentionally invoked a process available through eBay (located in California) to block further sales of the retailers' products and otherwise prevented the retailers from making further sales of any products from their business in Colorado, knowing their injury would occur in Colorado.

Similarly here, Plaintiff alleges that Defendants were all active, primary participants in alleged fraudulent conduct aimed at Oklahoma, the state from which Plaintiff operates its business, enters into contracts with service providers in other states, directs the manner in which requests for payment will be made, processes invoices for payment, and issues the resulting payments. Oklahoma is the "focal point" of both the alleged fraudulent scheme (which was designed to induce action by Plaintiff in this forum) and the harm suffered. *See Calder*, 465 U.S. at 789. Although most of the conduct involved in the alleged scheme – preparing false or inflated invoices and destroying supporting documents – occurred in North Dakota, the fraud was aimed at Plaintiff's business in Oklahoma with knowledge that Plaintiff's injury – overpayment for services rendered or claimed – would be suffered in its home state. The fact that Mr. Guderjahn and Mr. Knudsen were acting on behalf of GTI or LJS in allegedly preparing fraudulent invoices for submission to Plaintiff "does not somehow insulate [them] from jurisdiction." *See id*. at 790. Plaintiff's tort claim against the individual defendants rests on their personal participation in the alleged conduct designed to injure Plaintiff in Oklahoma rather than on their status as corporate officers.

Notably, Mr. Knudsen and LJS deny mailing invoices to Plaintiff in Oklahoma, but they do not deny creating and preparing such invoices for mailing. The Complaint specifically alleges a false invoice was submitted for services by LJS. *See* Compl. [Doc. No. 1], ¶ 28. Thus, the affidavits

submitted by Defendants do not create a factual dispute that would prevent a finding in Plaintiff's favor regarding jurisdictional facts. In short, the Court finds that Plaintiff's allegations, if proven, would establish that Defendants purposefully directed fraudulent activities at an Oklahoma resident knowing that Plaintiff's injury would be suffered in this state.

Therefore, the Court finds Plaintiff has made a sufficient showing to establish personal jurisdiction over all defendants for Plaintiff's tort action in this forum.

### 3. Reasonableness

The Court must also consider whether the exercise of jurisdiction is reasonable in light of the circumstances surrounding the case. *Burger King*, 471 U.S. at 477-78. To overcome Plaintiff's *prime facie* showing, Defendants "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (quoting *Burger King*, 471 U.S. at 477); *see also Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011); *Dudnikov*, 514 F.3d at 1080.[7] Relevant factors include:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Pro Axess*, 428 F.3d at 1279-80; *accord DiPanfilo*, 671 F.3d at 1167; *Dudnikov*, 514 F.3d at 1080.

---

[7] The reasonableness inquiry "evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *DiPanfilo*, 671 F.3d at 1167. However, in light of the relatively strong contacts with Oklahoma created by Defendants' alleged fraudulent conduct aimed at one of its citizens, the sliding-scale approach mandates a strong showing of unreasonableness. *See id.* at 1169.

The Court finds Defendants have not made the requisite showing in this case. Defendants' arguments for unreasonableness hinge on the burden on them to litigate far from their home state and an alleged greater efficiency of litigation in North Dakota where many witnesses reside. The Court is not persuaded by these arguments, where none of the other factors "seems to weigh definitively in favor of defendants." *Dudnikov*, 514 F.3d at 1080. Plaintiff makes similar, countervailing arguments regarding its interest in obtaining convenient relief in a forum where its witnesses and evidence are located. Also, the Master Service Agreement calls for the application of Oklahoma law, and "Oklahoma has a 'manifest interest' in providing a forum in which its residents can seek redress for intentional injuries caused by out-of-state actors." *See Intercon*, 205 F.3d at 1249 (quoting *Burger King*, 471 U.S. at 473). In short, upon balancing the requisite factors, the Court finds an exercise of jurisdiction over Defendants for purposes of this case is reasonable, and comports with traditional notions of fair play and substantial justice.

**D.   Conclusion**

For these reasons, the Court finds the case is not subject to dismissal or transfer for lack of personal jurisdiction.

## II.   Proper Venue

**A.   Parties' Contentions**

Defendants challenge Plaintiff's alleged basis for venue under 28 U.S.C. § 1391(b)(2), that "a substantial part of the events or omissions giving rise to the claims . . . occurred in the Western District of Oklahoma." *See* Compl. [Doc. No. 1], ¶ 12. Defendants argue that "[a]ll of the events material to Plaintiff's claims of overbilling, excessive hours driven, excessive hourly rates, record keeping and subcontracting occurred in North Dakota" and "[t]he acts and omissions in this case have a close nexus to North Dakota, not Oklahoma." *See* Defs.' Motion [Doc. No. 18] at 20. In

response, Plaintiff asserts that where claims are based on the submission of false invoices and the acceptance of unearned payments, "[t]he law deems such acts to have 'substantially occurred,' not only in the venue where the fraudulent invoices were created, but also in the venue where the invoices were received and paid." *See* Pl.'s Resp. Br. [Doc. No. 27], at 26.

**B. Standard of Decision**

When a timely challenge is made, a plaintiff has the burden to establish that its chosen forum is a proper venue for the action. Generally, the plaintiff can meet this challenge by reference to well-pled factual allegations of the complaint, which are accepted as true. *See Hancock v. American Tel. & Tel. Co.*, 720 F.3d 1248, 1260 (10th Cir. 2012). However, evidence outside the complaint may be considered, and "a defendant may defeat a plaintiff's choice of venue by introducing affidavit evidence of improper venue." *Id.*

**C. Analysis**

The general venue provision of § 1391(b) "contemplates that venue can be appropriate in more than one district and permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (internal quotation omitted). Deciding a challenge to venue under this provision requires a two-part analysis. "First, [courts] examine the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.* "Second, [courts] determine whether substantial events material to those claims occurred in the forum district." *Id.* (internal quotation omitted). "The substantiality requirement is satisfied upon a showing of acts and omissions that have a close nexus to the alleged claims." *Id.* (internal quotation omitted).

In this case, Plaintiff asserts contract and tort theories of liability premised on the same allegations of conduct by Defendants that resulted in inflated payments to GTI for transportation

services. The services were rendered (or claimed to be rendered) primarily in North Dakota, and the conduct of creating the invoices to induce payment occurred in North Dakota. However, Plaintiff received the invoices in North Dakota and the Western District of Oklahoma, processed the invoices for payment in this district, and issued payments to GTI here. Under these circumstances both North Dakota and the Western District of Oklahoma have a close nexus to the alleged claims. Accordingly, the Court finds that the substantiality requirement for proper venue to exist in this judicial district has been met.

### III. Permissive Transfer of Venue

**A. Standard of Decision**

The transfer of a civil action from one federal judicial district to another district where it might have been brought is governed by 28 U.S.C. § 1404(a), which authorizes such a transfer "[f]or the convenience of parties and witnesses, in the interest of justice." A permissive transfer under this provision "lies within the sound judicial discretion of the trial judge," who must examine the "circumstances of each particular case" in exercising his discretion. *See Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). "The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

**B. Analysis**

The court of appeals has directed district courts considering a § 1404 transfer to "weigh the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical."

*Id.* (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). Generally, the first factor weighs heavily against a transfer: "'Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed.'" *Id.* at 1167-68 (quoting *Scheidt*, 956 F.2d at 965).

In this case, Plaintiff clearly prefers for the case to remain in Oklahoma, where its principal place of business is located. Upon consideration of other factors, the Court finds that Defendants have failed to make a strong showing, on the record currently presented, that the requested transfer should be granted. Defendants rely most heavily on the second and third factors – the accessibility of witnesses and evidence, and litigation costs – and focus on the fact that the underlying conduct constituting the alleged breaches of contract and fraud occurred in North Dakota.[8] Undoubtedly, much of the documentary evidence and key witnesses regarding services rendered (or not rendered)

---

[8] Defendants also argue, without sufficient explanation, that other factors weigh in their favor. For example, Defendants do not identify any obstacle to enforcement of a foreign judgment in North Dakota. Regarding congested dockets, Defendants present statistical information from the Administrative Office of the United States Courts to argue that this factor favors North Dakota. However, the statistics do not show a substantial difference between the Western District of Oklahoma and North Dakota. While judges in that district have lower case loads, the median time from filing to disposition of civil cases is lower in this district.

by GTI, LJS, and other subcontractors will be found in North Dakota, where Plaintiff's production activities related to those services occurred. Defendants contend, and Plaintiff concedes, that some fact witnesses are non-parties who are beyond the subpoena power of this Court.[9] Further, Plaintiff cannot convincingly deny that the costs of making necessary proof of fraudulent conduct by actors in North Dakota may be substantially greater if the case proceeds in Oklahoma. At this early stage of the case, however, the significance of the evidence located in North Dakota and potential litigation costs are largely unknown.

According to the court of appeals, "[t]he convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *See Bartile Roofs*, 618 F.3d at 1169. To demonstrate inconvenience, however, "the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'" *Id*. (quoting *Scheidt*, 956 F.2d at 966) (alterations by the court in *Bartile Roofs*). Here, as in *Bartile Roofs*, Defendants allege the majority of potential witnesses are residents of the proposed forum, but they have "neither identified those witnesses with specificity nor indicated the subject matter of their testimony." *Id*. Similarly, Defendant have not attempted to quantify the potential costs of litigating the case in Oklahoma.

Therefore, after weighing the pertinent factors, the Court finds that a permissive transfer of venue should not be granted on the present record.

---

[9] Plaintiff argues only that "[t]he parties will not need *significant* amounts of testimony from third parties" to prove or defend against Plaintiff's claims. *See* Pl.'s Resp. [Doc. No. 27] at 23 (emphasis added).

## IV. Conclusion

For these reasons, the Court finds that Plaintiff has made a sufficient showing of personal jurisdiction in Oklahoma and venue is proper in this forum, and that Defendants have failed to justify a transfer of the case to the District of North Dakota.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, Motion to Transfer Venue [Doc. No. 18] is DENIED, as set forth herein.

IT IS SO ORDERED this 14th day of February, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE